# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARION J. CARROLL, an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMERI-FORCE CRAFT SERVICES, INC., et. al.,<br><br>Defendant. | Case No.: 24-cv-1443-RSH-DTF<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>[ECF No. 22] |

Pending before the Court is Plaintiff's motion to remand the action to state court. ECF No. 22. The motion is fully briefed. ECF Nos. 24-26. As set forth below, the Court denies the motion.

## I.    BACKGROUND

On June 6, 2024, plaintiff Marion J. Carroll filed this wage and hour putative class action in the California Superior Court for the County of San Diego against defendants Ameri-Force Craft Services, Inc. ("Ameri-Force"); National Steel and Shipbuilding Co. ("NASSCO"); and Misael Vidama. ECF No. 1-2. The Complaint alleges that Plaintiff worked for Defendants as a non-exempt employee from August 2023 through May 2024.

*Id.* ¶ 2. She seeks to represent a class of "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." *Id.* ¶ 28. The Complaint brings claims for: (1) failure to pay overtime; (2) failure to pay minimum wages; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to pay wages due upon separation; (6) failure to provide accurate wage statements; (7) failure to timely pay wages during employment; (8) violation of California Labor Code § 2802, requiring reimbursement for certain employee expenses; (9) violation of California Labor Code § 227.3, requirement payment of vested vacation time upon termination; and (10) failure to provide paid sick leave, in violation of California Business & Professions Code § 17200 and the Healthy Workplace Healthy Families Act of 2014, codified at California Labor Code § 245 *et seq*.

On August 14, 2024, Ameri-Force removed the action to this Court pursuant to the removal provision in the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). ECF No. 1.

On September 10, 2024, pursuant to a joint motion by the Parties, the Court stayed the action to allow the Parties to pursue mediation. ECF No. 11. After the Parties advised that they were unable to reach a settlement, the Court lifted the stay on May 27, 2025. ECF No. 20.

On July 10, 2025, Ameri-Force filed its motion to remand. ECF No. 22. NASSCO has joined in the motion. ECF No. 25.

## II.     LEGAL STANDARD

The Class Action Fairness Act "provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the "matter in controversy exceeds the sum or value of $5,000,000." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. §§ 1332(d)(2), (5)(B)). "The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal." *Wash. State v. Chimei Innolux Corp.*, 659 F.3d

842, 847 (9th Cir. 2011). "[N]o antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014).

## III.   ANALYSIS

### A.   Amount in Controversy

#### 1.   Generally

Plaintiff first argues that Defendants have failed to satisfy the amount-in-controversy requirement under CAFA. ECF No. 22 at 8. To satisfy that requirement, "a removing party must initially file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (quoting *Dart Cherokee*, 574 U.S. at 89). "[T]he defendant seeking removal bears the burden of proof to establish by a preponderance of the evidence that the amount-in-controversy requirement is satisfied." *Id.*

"Generally, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Lewis*, 627 F.3d at 399 (internal quotation marks omitted). "Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87. However, "if the plaintiff contests the defendant's allegation ... both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88.

"Because the Court evaluates a challenged amount-in-controversy estimate under the preponderance of the evidence standard, the defendant need only establish 'that the potential damage *could* exceed the jurisdictional amount.'" *Campbell*, 2025 WL 720188, at *3 (quoting *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014)). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

"While the defendant's amount-in-controversy estimate must be grounded in the plaintiff's complaint, the parties' additional evidence may include 'affidavits or

declarations, or other summary-judgment-type evidence relevant to the amount-in-controversy at the time of removal.'" *Campbell v. SkyWest Airlines, Inc.*, No. 3:24-CV-2141 TWR (SBC), 2025 WL 720188, at *3 (S.D. Cal. Mar. 6, 2025) (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)). Although the removing party may rely "on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million," the "reasoning and underlying assumptions" must be "reasonable." *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993 (9th Cir. 2022) (internal quotation marks omitted).

"[I]n most wage and hour class actions, CAFA amount-in-controversy estimates are premised on three variables: (1) the total number of possible violations; (2) the frequency at which violations might have occurred; and (3) the potential cost associated with each hypothetical violation." *Salatino v. Am. Airlines, Inc.*, 719 F. Supp. 3d 1094, 1100 (S.D. Cal. 2024). "Once each of these variables is assigned a value, the interplay between them is relatively simple in most cases; the numbers need only be multiplied together." *Id.* at 1101.

### 2. Ameri-Force's Methodology and Plaintiff's Objections

Here, the Complaint does not specify an amount in controversy. For each of the first eight causes of action, the Complaint alleges a period of time during which Defendants "at times" violated the applicable labor laws. *E.g.*, ECF No. 1-2 ¶ 48 ("*For four (4) years prior to the filing of the Complaint in this action through the present*, Defendants failed, *at times*, to accurately track and/or pay for all hours actually worked at their regular rate of pay that is above the minimum wage to the detriment of Plaintiff and Class Members.") (emphasis added).[1] For the fifth, sixth, and seventh claims, the Complaint also alleges that the violations were pursuant to Defendants' "policies and practices." *Id.* ¶¶ 71, 78, 87. For the

---

[1] In the "factual background" section, the Complaint alleges that Defendants failed to pay overtime wages "to Plaintiff and Class Members, or some of them," *id.* ¶ 16, and contains similar language in discussing the other alleged violations.

ninth and tenth claims, the Complaint alleges that Defendants had a "consistent policy" of violating the respective statutes. *Id.* ¶¶ 100, 104. The Complaint further alleges the superiority of the class action over individual actions, on the grounds that class members are entitled to recovery "by reason of Defendants' policies and/or practices that have resulted in the violation of the Labor Code at times, as set forth herein." *Id.* ¶ 36.

Ameri-Force has submitted a declaration from its Chief Financial Officer, Lisa Boyd. ECF No. 24-1. Ms. Boyd states that during the relevant period of June 6, 2020 (four years prior to the filing of this action) to August 14, 2024 (the date of removal), Ameri-Force employed 767 employees within the State of California. *Id.* ¶¶ 3, 8. Ameri-Force pays its employees weekly. *Id.* ¶ 10. Ms. Boyd determined the number of weekly checks that Ameri-Force issued during the relevant time period, the average hourly rate for each year during that time period, and the number of employees who were working for each of those years. *Id.* ¶¶ 11-13. Ms. Boyd states that "nearly all" of the 767 Ameri-Force employees in California during the relevant time period worked 7.5 hours or more per day, and worked on average five days per week. *Id.* ¶ 15. Of the 767 employees, 59 received a paycheck in the week before the action was removed to federal court; the "vast majority" of the employees who did not receive a paycheck during that week are no longer employed by Ameri-Force. *Id.* ¶ 15. Plaintiff has not challenged Ms. Boyd's statements.

Based on the foregoing, Defendant has estimated the following amounts in controversy:

| Claim | Methodology and Assumptions | Amount |
|---|---|---|
| 1 (overtime) | Failure to pay one hour of overtime per week, for each of the total weeks worked, based on an hourly rate of $23.74 (the average wage from 2020-24), from four years prior to filing of complaint through the date of removal | $681,967.11 |
| 2 (minimum wage) | Failure to pay one hour of minimum wage per week, for each of the total weeks worked, based on the minimum wage of $14.70 (the average minimum wage from 2020-24), from four years prior to the filing of the complaint through the date of removal; multiplied by two for liquidated damages | $563,039.40 |

| | | |
|---|---|---|
| 3, 4 (meal and rest period) | Failure to provide a meal and rest period (one each) per week, for each of the total weeks worked, based on an hourly rate of $23.74, from four years prior to the filing of the complaint through the date of removal | $909,289.48 |
| 5 (waiting time penalties) | Failure to pay wages earned prior to separation, for 708 employees who have separated, based on an hourly rate of $23.74, for 30 days at 7.5 hours per day, multiplied by 0.75 (discounted based on assumption that one-quarter of the 708 employees may still be on the payroll), multiplied by 0.75 (accounting for a three-year instead of four-year statute of limitations) | $2,127,252.38 |
| 6 (wage statements) | Failure to provide accurate wage statements for 50% of all pay periods for one year prior to the date of complaint through the date of removal, based on $50 per initial penalty per employee, followed by $100 per subsequent penalty per employee | $211,375.00 |
| 7 (timely wages) | Failure to pay timely wages for 50% of all pay periods for one year prior to the date of complaint through the date of removal, based on $100 per initial penalty per employee, followed by $200 per subsequent penalty per employee, plus 25% of the amount unlawfully withheld | $528,437.50 |
| 8 (expense reimbursement) | Failure to reimburse expenses of $20 per month from three years prior to the date of complaint through the date of removal, reduced by half based on 50% violation rate | $31,368.75 |
| 10 (paid sick leave) | Failure to provide paid sick leave for 2020 through 2024, based on the number of persons employed each year, multiplied by the number of sick days provided by law for each year (two paid sick days per year in 2020 and 2021, three in 2022 and 2023, and five in 2024), multiplied by the average hourly rate for each year, reduced by half based on 50% violation rate | $243,937.26 |
| Subtotal | | **$5,296,666.88** |
| Attorneys' fees | Based on 25% of the subtotal | $1,324.166.72 |
| **Amount in controversy** | | **$6,620,833.60** |

Plaintiff does not contest the arithmetic set forth above. Instead, Plaintiff argues that Defendants' assumptions—in particular, regarding the *rate* of alleged violations—are unsupported and unreasonable. ECF No. 22 at 8-19; ECF No. 26 at 4-5.

### 3. Discussion

In a recent opinion not cited in Plaintiff's opening brief, the Ninth Circuit addressed the reasonableness of assumptions in the context of determining the amount in controversy under CAFA in a wage and hour case:

> What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue. For example, in a wage-and-hour case, the number of employees in the class may be most easily determined by examining the defendant's employment records. It therefore may make sense to expect a defendant to introduce evidence of that number. *See Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 917 (11th Cir. 2014) (noting that a CAFA defendant has "access to its own employment records" and can provide information derived from those records "without conceding liability or being unduly burdened"). By contrast, it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the *alleged* violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist. For that reason, a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint.

*Perez v. Rose Hill Co.*, 131 F.4th 804, 808 (9th Cir. 2025). The analysis used by the Ninth Circuit in *Rose Hill* bears discussion here.

In *Rose Hill*, the complaint alleged—similar to the Complaint here—that the defendant committed wage and hour violations "at times," without further quantifying a violation rate. 131 F.4th at 806. Based on this allegation, the defendant "assumed that, every week during the class period, it failed to pay all class members for one hour of regular time, one hour of overtime, a one-hour compensable meal break, and a one-hour compensable rest break." *Id.* at 806-07. Next, the defendant "used the minimum wage in California during the class period to estimate a wage rate of $14 for regular time (including meal and rest periods) and $21 for overtime." *Id.* at 807. The defendant "then multiplied the number of employees by the number of weekly violations per employee, the number of weeks in the four-year period, and the wage rate to arrive at an amount in controversy." *Id.* The defendant separately estimated the amount in controversy for each count, "added an assumption that [the plaintiff's] attorneys would seek a 33 percent fee award," and proffered the grand total as the amount in controversy. *Id.*

The district court determined that the defendant failed to provide an adequate basis for the defendant's assumptions regarding the violation rate, and concluded that the amount

in controversy requirement was not met. *Id.* The Ninth Circuit determined that the district court's analysis was flawed. The Ninth Circuit explained:

> It may be true that the phrase "at times" could support a lower violation rate as easily as it could support the violation rate that Rose Hills assumed. But that does not automatically render the rate assumed by Rose Hills unreasonable. And if Perez believed that some other assumption would have been more reasonable, she was free to propose that rate. (She was also free to use some more specific phrase than "at times" when drafting the complaint; had she done so, she could have constrained the range of assumptions that Rose Hills could reasonably adopt.) The district court could then have weighed the evidence and arguments in deciding which assumption was more appropriate.

*Id.* at 810. The Ninth Circuit vacated the remand order, and remanded to the district court for further proceedings. *Id.*

Here, as in *Rose Hill*, it may be true that the phrase "'at times' could support a lower violation rate as easily at it could support the violation rather that [Defendant] assumed." *See id.* But that does not render unreasonable Defendants' proposed violation rates. Here, as in *Rose Hill*, "if [Plaintiff] believed that some other assumption would have been more reasonable, she was free to propose that rate." *See id.* But despite the guidance from the Ninth Circuit in *Rose Hill*, quoted extensively in Defendants' opposition brief, Plaintiff has declined to propose some other rate of violation, choosing only to attack Defendants' methodology as unfounded.

The Court therefore considers, not whether the phrase "at times" could reasonably support a lower violation rate than that proposed by Defendants, but whether the violation rates assumed by Defendants here are unreasonable. In the context of Plaintiff's allegations here and the employment data put forward by Defendants, the Court concludes that those assumed violation rates are indeed reasonable.

Numerous district courts have concluded, reviewing complaints alleging violations "at times" or using similar language, that an assumption of at least one violation per week for various wage and hour claims—such as for unpaid overtime, unpaid minimum wages,

and meal and rest period claims—was reasonable. *See, e.g.*, *Cabrera v. S. Valley Almond Co., LLC*, No. 1:21-CV-00748-AWI-JLT, 2021 WL 5937585, at *8 (E.D. Cal. Dec. 16, 2021) (concluding that violation rates of one hour of unpaid overtime per week and one hour of unpaid minimum wages per week were consistent with allegations that violations occurred "at times" and "on occasion"); *Bonetti v. TriStruX LLC*, No. 24-CV-01319-LB, 2024 WL 3225905, at *6-7 (N.D. Cal. June 27, 2024) (concluding that violation rates of once or twice per week for overtime, minimum wage, and meal and rest period claims were consistent with allegations that violations occurred "at times" and "on occasion"); *Demaria v. Big Lots Stores - PNS, LLC*, No. 2:23-CV-00296-DJC-CKD, 2023 WL 6390151, at *7-8 (E.D. Cal. Sept. 29, 2023) (concluding that violation rate of one hour per week of unpaid minimum wages, and two violations per week of meal and rest break periods, were reasonable where complaint alleged violations "at times"). Plaintiff suggests that Defendants' assumptions as to meal and rest breaks are unreasonable absent evidence of shifts that qualified for meal or rest breaks; but the declaration of Ameri-Force's CFO stated that "nearly all" of the 767 Ameri-Force employees in California during the relevant time period worked 7.5 hours or more per day, and worked on average five days per week. ECF No. 245-1 ¶ 15. Plaintiff herself alleges that shifts of this duration qualify for meal and rest periods. ECF No. 1-2 ¶¶ 53, 61. The Court also concludes that the inclusion of liquidated damages, in an amount equal to the unpaid minimum wages, is a reasonable assumption. *See* Cal. Labor Code § 1194.2 ("[A]n employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.").

District courts have upheld the assumption of 100% violation rates for waiting time penalties. *See Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-CV-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (finding reasonable an assumption of the maximum waiting time penalty of 30 days of pay); *Hill v. Hogan Pers., LLC*, No. EDCV 25-0564 JGB (SHKX), 2025 WL 1898255, at *8 (C.D. Cal. July 9 2025) ("[T]he 100% violation rate is not only reasonable—it is a necessary condition of Plaintiff's decision to

file this putative class action case."). Plaintiff argues that this assumption is unreasonable here, because the Complaint alleges that class members are entitled to waiting time penalties "from the date their earned and unpaid wages were due, upon termination or resignation, until paid, *up to* a maximum of thirty (30) days." ECF No. 1-2 ¶ 71 (emphasis added). The Court does not construe this language in the Complaint to mean that Plaintiff is seeking something less than the full amount of waiting time penalties available for every class member. *See also Nunes*, 2019 WL 4316903, at *3 (finding assumption of 30-day penalty reasonable where complaint demanded "up to thirty days of pay as penalty"). Plaintiff also argues that "Defendant's discounting of the waiting time penalties by 25% to account for the three-year statute of limitations is unreasonable as it assumes an equal distribution of terminated employees over time," ECF No. 26 at 5, but makes no argument as to why some other, non-equal distribution should be used.

Additionally, Defendants' assumption of a 50% violation rate for failure to provide accurate wage statements is reasonable here. Indeed, courts have upheld the reasonableness of an assumed 100% violation rate, based on the reasonable assumption of other weekly wage and hour violations that in turn would result in inaccurate wage statements. *See Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 978 (E.D. Cal. 2023) (concluding that 100% violation rate for inaccurate wage statements where another reasonable assumption included weekly violations for meal and rest period claims); *Nunes*, 2019 WL 4316903, at *3 ("[I]t is reasonable to assume the class members suffered at least one violation (e.g. one missed meal or rest break) per pay period. This Court therefore finds, based on the Complaint, Home Depot's assumption of a 100 percent violation rate [for inaccurate wage statements] is reasonable."). For similar reasons, the Court determines that Defendants' assumed 50% violation rate for failure to timely pay wages is reasonable. *See, e.g.*, *La Grow v. JetBlue Airways Corp.*, No. 2:24-CV-00518-ODW (SKX), 2024 WL 3291589, at *6 (C.D. Cal. July 3, 2024) ("[A]s the Court finds a 25% violation rate to be a reasonable assumption rate for La Grow's meal and rest break claims (assuming a violation one out of every four shifts worked by the putative class members), this Court agrees with the court

in *Lucas* that it is likely that the wage statements JetBlue provided would necessarily be inaccurate 100% of the time.").

As for Defendants' assumption of a violation rate of $20 per month for unreimbursed expenses, courts have found similar assumptions reasonable where the plaintiff fails to offer an alternative figure. *See Rombaut v. U.S. Concepts LLC*, No. 2:25-CV-02802-AB (EX), 2025 WL 2044670, at *8 (C.D. Cal. July 18, 2025); *Vallejo v. Sterigenics U.S., LLC*, No. 3:20-cv-01788-AJB-AHG, 2021 WL 2685348, at *6 (S.D. Cal. June 29, 2021) (approving assumption of $25 per month for unreimbursed cell phone expenses). The Court also determines that Defendants' assumption of a 50% violation rate for Plaintiff's paid sick leave claim is reasonable, where Plaintiff alleges that Defendants had a "consistent policy" of violating the applicable statute. *See* ECF No. 1-2 ¶ 104.

As set forth above, the amount in controversy exceeds $5 million before any addition of attorneys' fees. The Court determines that Defendants' assumption of 25% in fees is reasonable as well. *See Rombaut*, 2025 WL 2044670 at *9; *Jacob v. CSL Plasma Inc.*, No. 24-CV-01807-H-DEB, 2024 WL 5004529, at *6 (S.D. Cal. Dec. 6, 2024). Accordingly, Defendants have satisfied the amount in controversy requirement under CAFA.[2]

### B. Local Controversy Exception

Plaintiff next argues that the case should be remanded because it falls under the "local controversy exception" to CAFA's removal provisions, 28 U.S.C. § 1332(d)(4)(A). *See* ECF No. 22 at 19-24. That exception provides:

//

---

[2] Plaintiff suggests in passing that Defendants' estimate of the amount in controversy is "likely inaccurate" due to the fact of a prior class action settlement involving Ameri-Force. ECF No. 22 at 14-15. However, the Ninth Circuit has determined that a defense based on release of claims is irrelevant to determining the amount in controversy. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 928 (9th Cir. 2019) ("[T]he strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation.").

>   (4) A district court shall decline to exercise jurisdiction under [CAFA] …
>
>   (A) (i) over a class action in which—
>
>   (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
>   (II) at least 1 defendant is a defendant—
>
>   (aa) from whom significant relief is sought by members of the plaintiff class;
>
>   (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>
>   (cc) who is a citizen of the State in which the action was originally filed; and
>
>   (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
>   (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A). If the local controversy exception applies, and a district court must remand the class action back to the originating state court. *Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 928 (9th Cir. 2015).

By its terms, the local controversy exception does not apply unless the fourth prong of the statute, the "no similar class action" requirement, is met. Here, the Plaintiff does not dispute that, within the three years prior to the filing of this lawsuit, there have been two class actions asserting the same or similar claims on a class action basis on behalf of NASSCO's non-exempt employees in California: (1) *Timothy Reed v. NASSCO Inc. et al.*,

San Diego County Superior Court Case No. 37-2021-00046144-CU-OE-CTL, filed October 8, 2021 ("*Reed*"); and (2) and *Eyong v. National Steel and Shipbuilding Co., et al.*, San Diego Superior Court Case No. 37-2024-00017371-CU-OE-CTL ("*Eyong*"), filed on April 12, 2024, and removed to federal court on May 17, 2024. *See* ECF No. 24 at 21; ECF No. 26 at 9-10. Plaintiff contends, however, that because these two cases settled individually, and the class claims in each case were dismissed, that the "purpose" or "intent" of the rule is satisfied. ECF No. 26 at 9 ("[T]here is … no danger that the intent of the 'no additional class actions' requirement is violated as there would be no concurrent class action."). Plaintiff relies on the Ninth Circuit's decision in *Bridewell-Sledge v. Blue Cross of California*, 798 F.3d 923 (9th Cir. 2015), which observed that "the purpose of the fourth prong . . . is to ensure that similar, overlapping class actions do not proceed before different state courts in an uncoordinated, redundant fashion resulting in inefficiencies." *Id.* at 932.

The Ninth Circuit's recital of the statutory purpose of the fourth prong did not authorize district courts to examine whether that purpose would be well served in a given case, as a substitute for applying the plain language of the statute. *Bridewell-Sledge* addressed the situation where two similar class actions had been filed in California state court, and then consolidated into a single action in the California court, prior to the defendants filing two separate notices of removal to federal court. *Id.* at 924. The Ninth Circuit consulted California law to determine that, when the two actions had been consolidated, they were merged prior to removal into a single proceeding. *Id.* at 930. The Court concluded that under these circumstances, it was necessary to view the two state-court lawsuits "as a single consolidated class action that was united originally, rather than as two separate class actions filed at different times." *Id.* The Ninth Circuit continued, "[w]hen viewed as a single consolidated class action … it is undisputed that no other similar class action was filed against any of the defendants during the preceding three-year period." *Id.* Thus, the Ninth Circuit did not modify the statutory language of the fourth prong; instead, it applied that language to the facts before it. *See also Kendrick v. Conduent*

*State & Local Sols., Inc.*, 910 F.3d 1255, 1261 (9th Cir. 2018) ("As in *Bridewell-Sledge*, we are dealing with a single case, not two different class actions proceeding on different tracks before different judges. Therefore, no 'other class action' has been filed within the meaning of the statute.").

Plaintiff does not argue here that either the *Reed* or the *Eylan* case should be treated as a "single case" with the current class action. There is no statutory basis to discount them as "other," similar class actions filed within the three years preceding this lawsuit. The "no similar class action" requirement therefore bars the application of the local controversy exception to removal jurisdiction here.

### C. Plaintiff's Unfair Competition Claim for Restitution

Finally, Plaintiff argues that remand is warranted because the Court lacks equitable jurisdiction over Plaintiff's unfair competition claim for restitution of unpaid wages. ECF No. 22 at 24-25. However, "the presence of at least some claims over which the district court has original jurisdiction is sufficient to allow removal of an entire case, even if others of the claims alleged are beyond the district court's power to decide." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002-03 (9th Cir. 2001). Because the Court has subject jurisdiction over most of Plaintiff's claims, remanding the entire action would be inappropriate. *See, e.g.*, *Cantu v. C.R. England, Inc.*, No. EDCV 23-02126-MWF (SPx), 2024 WL 1995349, at *3 (C.D. Cal. May 6, 2024).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand [ECF No. 22] is **DENIED**.[3]

**IT IS SO ORDERED**.

Dated: September 11, 2025

_____
Hon. Robert S. Huie
United States District Judge

---

[3] The Court grants the Parties' requests for taking judicial notice of records of other court proceedings. ECF Nos. 22-2, 24-3, 26-1.